**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PATRICIA RYSAK** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **FERRO CORPORATION** | : | **NO. 22-2311** |

**MEMORANDUM OPINION**

**Savage, J.** **April 28, 2023**

Was plaintiff Patricia Rysak fired because her job was eliminated in a company reorganization or because of her age? This is the issue in this action brought under the Age Discrimination in Employment Act as amended, 29 U.S.C. §621, *et. seq.* (ADEA).

Moving for summary judgment, defendant Ferro Corporation argues that the undisputed evidence proves that the younger employee who was selected for the replacement job was better qualified. Rysak counters that the reasons given for her termination—poor performance and lesser qualified—are contradicted by the evidence that is far from undisputed.

After reviewing the record and drawing all inferences in favor of Rysak, we conclude that a reasonable jury could find that the reasons given by Ferro for terminating Rysak are inconsistent and incredible and its decision was instead motivated by age bias. Resolution of disputed evidence depends on credibility determinations that only a jury can make. Therefore, we shall deny the motion for summary judgment.

## Facts

Ferro Corporation manufactures technology-based performance materials, including paste and tape products for electronic devices and packaging.[1] Paste manufacturing produces conductive or insulative materials.[2] Tape manufacturing processes a liquid formula into a substrate strip that is hardened through a heating process.[3] Together paste and tape products create a circuit board.[4]

Rysak, now sixty-nine (69) years of age, began working for Ferro's predecessor company, Electro-Science Laboratories (ESL), in 1973 at the age of 19.[5] She worked at its King of Prussia manufacturing facility. During her 47 years at ESL, Rysak rose through the ranks, working as a quality control technician, production technician, production supervisor and assistant director of manufacturing.[6] When Ferro acquired ESL in 2016, she supervised employees in the paste production unit.[7] Although her title changed to Manager Paste Production, her responsibilities remained the same.[8]

---

[1] Def.'s Stmt. of Material Undisputed Facts ¶¶ 1, 4, 7, ECF No. 39 ["DSF"]; Pl.'s Resp. to DSF ¶¶ 1, 4, 7, ECF No. 40-9 ["PRDSF"].

[2] Dep. of Corry Luckenbach 64:1-19, ECF 40-5 (attached as Ex. B to Pl.'s Memo. Of Law in Opp. To Def.'s Mot. for Summ. J.) ["Luckenbach Dep."].

[3] Luckenbach Dep. 84:10-85:7.

[4] Luckenbach Dep. 84:10-20.

[5] Pl. Stmt. of Additional And/Or Disputed Facts That Preclude Summ. J., ¶¶ 2-4, ECF 40-9 ["PSF"]; Def.'s Resp. to Pl.'s Stmt. of Additional and/or Disputed Facts that Preclude Summ. J. ¶¶ 2-4, ECF 41-2 ["DRPSF"].

[6] DSF ¶ 18, 20, 21, 23, PRDSF ¶ 18, 20, 21, 23.

[7] DSF ¶ 24, PRDSF ¶ 24.

[8] DSF ¶¶ 25-27, PRDSF ¶¶ 25-27; Dep. of Patricia Rysak 102:2-11, 104:11-14; 18-24, 112:4-16 ECF 40-4 (attached as Ex. A to Pl.'s Memo. Of Law in Opp. To Def.'s Mot. for Summ. J.) ["Rysak Dep."].

Brian Besecker was Manager Tape Production at Ferro.[9] He started as a Paste Production Technician in 2003.[10] Before he became a manager, he worked as a technician, team leader, and assistant manager.[11] Besecker is 20 years younger than Rysak.[12]

When Ferro acquired ESL, it operated a facility in Vista, California.[13] Ferro later closed the Vista facility and transferred Vista's operations to its expanded King of Prussia facility as part of a plan called Project Palladium.[14] Under Project Palladium, Rysak was responsible for setting up Vista's paste products and equipment at the King of Prussia location.[15] To facilitate transferring the operations, she and Besecker were required to travel to Vista to observe the Vista production process.[16] Both Rysak and Besecker had to learn to use software called SAP to track orders, productions, and costs.[17]

In January 2020, Wayne Besler, North American Operations Manager, implemented, with leadership's approval, a reorganization plan for the King of Prussia operation.[18] As part of the plan, the paste and tape manager positions were consolidated.[19]

---

[9] DSF ¶ 32, PRDSF ¶ 32.
[10] DSF ¶ 30, PRDSF ¶ 30.
[11] DSF ¶ 32, PRDSF ¶ 32.
[12] PSF ¶ 90 DRPSF ¶ 90.
[13] DSF ¶ 34, PRDSF ¶ 34.
[14] DSF ¶ 37, PRDSF ¶ 37.
[15] Rysak Dep. 146:3-22.
[16] DSF ¶ 46; PRDSF ¶ 46.
[17] Luckenbach Dep. 159:19-160:5.
[18] DSF ¶¶ 96, 107, PRDSF ¶¶ 96, 107.
[19] DSF ¶ 97, PRDSF ¶ 97.

On March 6, 2020, Rysak was informed that her position was eliminated and Brian Besecker was selected for the job of the combined Production Manager role for paste and tape.[20] She was terminated the same day.[21]

Besler made the decision to select Besecker for the new position.[22] Operations Manager Corry Luckenbach, Rysak's immediate supervisor, was never told that performance was a reason for her termination.[23] When he learned she would be terminated, he told Besler that he disagreed with the decision.[24] He did not want to lose her because he valued her knowledge and experience.[25] He requested that the company create a position for her.[26]

A year before Rysak was terminated, Ferro had offered a voluntary early retirement program (VERP) to all salaried, non-union, full-time employees who were at least 55 years of age.[27] Although she was eligible, Rysak declined.[28] Barb Getting, John Moore, and Samy Palanisamy also declined the VERP. [29] Their positions were later eliminated.[30]

---

[20] DSF ¶¶ 108, 109, PRDSF ¶¶ 108-109.

[21] DSF ¶ 108, PRDSF ¶ 108, Rysak Dep. 247:23-248:1.

[22] DSF ¶¶ 129-130, PRDSF ¶¶ 129-130.

[23] DSF ¶ 29, PRDSF ¶ 29, PSF ¶ 68, DRPSF ¶ 68.

[24] Luckenbach Dep. 59:2-12.

[25] PSF ¶ 69, DRPSF ¶ 69, Luckenbach Dep. 59:2-12.

[26] PSF ¶ 70, DRPSF ¶ 70, Luckenbach Dep. 59:2-12.

[27] DSF ¶¶ 68, 71 PRDSF ¶¶ 68, 71.

[28] DSF ¶ 72, PRDSF ¶ 72.

[29] PSF ¶¶ 46-47, DRPSF ¶¶ 46-47.

[30] PSF ¶ 48, DRPSF ¶ 48.

Rysak filed this action asserting claims for age and gender discrimination.[31] She proceeds only on her age-based claim.[32]

Moving for summary judgment, Ferro argues that its decision to terminate Rysak and retain Besecker for the consolidated role was motivated by business needs, not discrimination. First, it claims it terminated Rysak pursuant to a global reorganization plan aimed to "drive value and increase profitability."[33] Second, it maintains that it chose Besecker over her because he had "superior qualities as it related to knowledge of both tape and paste production, teamwork, willingness to accept change, and overall performance."[34] Finally, Ferro argues that it is not required to justify why it did not offer Rysak a different position.[35] In the alternative, it argues that she was overqualified for the positions available and that her failures in the Vista transfer would have made her unlikely to have been considered.[36]

**Standard of Review**

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[31] Compl. ¶¶ 62, 72.

[32] Pl.'s Mem. of Law in Opp. To Def.'s Mot. For Summ. J. at 7 n. 1, ECF No. 40 ["Resp."].

[33] DMSJ at 10.

[34] *Id.* at 16.

[35] *Id.* at 22.

[36] *Id.*

In considering the motion, we must draw all reasonable inferences in the nonmovant's favor. *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003). Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (citation omitted). Credibility determinations, the drawing of legitimate inferences from facts and the weighing of evidence are matters left to the jury. *In re Asbestos Prod. Liab. Litig. (No. VI),* 822 F.3d 125, 135 (3d Cir. 2016) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)).

**Analysis**

Because Rysak is proceeding under a pretext theory, we evaluate her claims applying the burden-shifting *McDonnell Douglas* analysis. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511 (2002); *Starceski v. Westinghouse Electric Corp.,* 54 F.3d 1089, 1096, n. 4 (3d Cir.1995). Under the burden-shifting *McDonnell Douglas* analysis, Rysak must first establish a *prima facie* case of discrimination based on her age. *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (citations omitted); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Establishing a *prima facie* case of discrimination "is not onerous and poses a burden easily met." *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008) (internal quotation marks omitted) (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

If she succeeds in establishing a *prima facie* case, the burden shifts to the defendant to "offer a legitimate, nondiscriminatory explanation for its action." *Martinez,* 986 F.3d at 265 (citing *Willis v. UPMC Children's Hosp. of Pitts.*, 808 F.3d 638, 644 (3d Cir. 2015). The defendant's burden is "relatively light." *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (citation omitted). It can satisfy its burden by "introducing evidence

which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). It "need not prove that the tendered reason *actually* motivated" its decision. *Id.* at 763 (emphasis in original). It need only show that its decision could have been motivated by the proffered legitimate, non-discriminatory reason. *Iadimarco v. Runyon*, 190 F.3d 151, 157 (3d Cir. 1999).

If the defendant satisfies its burden, the plaintiff must produce evidence from which a reasonable factfinder could conclude that the proffered reason for taking the adverse action was merely a pretext for intentional discrimination. *Willis*, 808 F.3d at 644 (citing *Burton*, 707 F.3d at 426–27). The final burden of production "merges with the ultimate burden of persuading [the jury] that she has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256.

To establish a *prima facie* case of age discrimination, a plaintiff must show: (1) she is at least 40 years old; (2) she suffered an adverse employment decision; (3) she was qualified for the position; and (4) she was ultimately replaced by another employee who was sufficiently younger to support an inference of a discriminatory motive. *Willis*, 808 F.3d at 644 (citations omitted).

There is no question that Rysak has made out a *prima facie* case of age discrimination.[37] She was 66 years old when she was terminated.[38] A significantly

---

[37] Defendants assume for the purpose of this motion that Rsyak may be able to establish a prima facie case, but they maintain that she "was not qualified for the combined tape and paste manager position." DMSJ at 14.

[38] PSF ¶¶ 3,6, DRPSF ¶ 3, 6.

younger employee was selected for the consolidated position, and she was qualified for the position.[39]

To meet its burden of showing a legitimate, non-discriminatory reason for Rysak's termination, Ferro has produced evidence that the younger employee selected was better qualified. It contends that he had a background in both tape and paste production, while Rysak only had paste experience.[40] It also asserts that Rysak performed poorly in the Vista transfer and that management had concerns about her credibility and lack of teamwork.[41]

Ferro having shown legitimate reasons for selecting Besecker over Rysak, the burden shifts back to Rysak to discredit Ferro's proffered justification or present evidence that "an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Ferro's] action." *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 324 (3d Cir. 2014) (citing *Fuentes*, 32 F.3d at 764). A plaintiff may discredit the proffered reason by demonstrating "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' to satisfy the factfinder that the employer's actions could not have been for nondiscriminatory reasons." *Willis*, 808 F.3d at 644–45 (citing *Fuentes*, 32 F.3d at 765).

A plaintiff can meet her burden by producing evidence from which a factfinder could conclude that the adverse employment action was more likely than not the result of discrimination. *Id*. at 645 (citing *Fuentes*, 32 F.3d at 764). Examples of such evidence

---

[39] DSF ¶¶ 108, 109 PRDSF ¶¶ 108, 109, PSF ¶ 77, 90, DRPSF ¶¶ 77, 90.

[40] DMSJ at 17; Dep. of Wayne Besler 74:21-75:3 ("…her position was eliminated, it was based off of qualifications."), ECF 40-7 (attached as Ex. H to Pl.'s Memo. Of Law in Opp. To Def.'s Mot. for Summ. J.) ["Besler Dep."].

[41] DMSJ at 9.

include previous acts of discrimination against the plaintiff, discrimination against other persons within the plaintiff's protected class or within another protected class, or a showing that the defendant has treated similarly situated non-members of the protected class more favorably. *Id.* (citations omitted).

In other words, Rysak must proffer "'evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons . . . or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *In re Trib. Media Co.*, 902 F.3d 384, 402 (3d Cir. 2018) (quoting *Fuentes*, 32 F.3d at 762).

*The Early Retirement Plan*

Rysak has produced evidence from which a fact finder could conclude that Ferro's legitimate, non-discriminatory reasons are pretext for age discrimination. She points to discrimination against other older persons, arguing that the VERP "target[ed] only those over fifty-five (55) as an express message from the company that this category of people was no longer wanted."[42]

Ferro argues that the VERP was lawful when it was offered. Ferro is correct. "[A]n offer of early retirement can only benefit an employee and, while it may present her with a difficult decision, the mere offer without more does not support a claim of age discrimination." *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1088 (3d Cir. 1992). But, it is not irrelevant. It may, together with other evidence, show that Ferro intended to wean its older employees from the work force in favor of younger ones.

---

[42] Pl. Resp. at 19, PSF ¶ 50, DRPSF ¶ 50.

Rysak was terminated on March 6, 2020.[43] Three other older employees who declined the program were terminated: Barb Getting, John Moore, and Samy Palanisamy.[44] Moore and Palanisamy were terminated three weeks after Rysak.[45] Getting was terminated on August 8th, 2020.[46] Although all four employees were told their positions were eliminated, the reorganization plan documented only Moore and Rysak's eliminations.[47] Ferro has not identified any employee younger than 55 whose position was eliminated.[48]

Ferro argues that its VERP is not evidence of age bias because it had been offered nearly a year before the company's reorganization.[49] It claims that the program was optional for eligible employees who were free to decline and continue their employment without consequence.[50]

Whether there was a causal connection between the VERP and the terminations of Rysak and the other older employees who had rejected the offer of early retirement is for the fact finder. A jury could reasonably find that Ferro intended to replace older employees and found ways to do so after the initial step—the VERP—failed. The jury could decide that Ferro was patiently implementing a plan to avoid the appearance of age-motivated discrimination.

---

[43] Dep. of Sarah Adam Mackey 102:4-6, ECF 40-7 (attached as Ex. J to Pl.'s Memo. Of Law in Opp. To Def.'s Mot. for Summ. J.) ["Mackey Dep."], Rysak Dep 247:23-248:1.

[44] Mackey Dep. 82:3-23; 86:3-87:3.

[45] Mackey Dep. 105:9-13; 107:12-16.

[46] Dep. of Barbara Getting 26:17-24; 29:11-14, ECF 40-8 (attached as Ex. K to Pl.'s Memo. Of Law in Opp. To Def.'s Mot. for Summ. J.) ["Getting Dep."].

[47] Reorganization Plan and Labor Costs Slide, ECF 40-8 at 75 (attached as Ex. Q to PRDSF).

[48] PSF ¶ 85, DRPSF ¶ 85, Mackey Dep. 90:13-91:14.

[49] DMSJ at 19.

[50] DSF ¶ 76.

*Rysak's Performance*

Ferro's proffered explanation that Rysak's performance was a factor in the decision to choose the younger employee is not supported by the record. Rysak's performance was not raised until after she was terminated. Ferro's present claim that Rysak's performance was poor is belied by her history and documented performance ratings.

In her December 2017 Performance Review, Rysak exceeded or met expectations as an employee and manager according to her supervisor Dennis Meagher.[51] Meagher commented: "You take ownership for your area of responsibility. Your knowledge and experience give you excellent understanding of the KoP business and aligning operations to business objectives."[52] In her 2018 and 2019 reviews, Rysak's supervisor Corry Luckenbach rated her as exceeding or meeting expectations.[53]

Ferro argues that Rysak "was unwilling to travel to Vista,..refused to engage with the Vista team" and "[t]hese failures caused disruptions."[54] However, Luckenbach's contemporaneous performance review in 2019 shows that Rysak completed Ferro's goal regarding her trip to Vista.[55] The goal was to schedule and complete an initial trip to the Vista plant for at least two full days.[56] According to Luckenbach, travel freezes prevented

[51] 2017 Patricia Rysak Annual Performance Review – Leadership, ECF No. 40-6 at 19-23 (attached as Ex. E to PRDSF) ["2017 Performance Review"]; PSF ¶ 19; DRPSF ¶ 19.

[52] 2017 Performance Review at 20.

[53] 2018 Patricia Rysak Annual Performance Review – Leadership, ECF No. 40-6 at 25-35 (attached as Ex. F to PRDSF) ["2018 Performance Review"]; 2019 Patricia Rysak Annual Performance Review – Leadership, ECF No. 40-6 at 37-48 (attached as Ex. G to PRDSF) ["2019 Performance Review"]; PSF ¶¶ 19, 21; DRPSF ¶¶ 19, 21.

[54] DMSJ at 6.

[55] 2018 Performance Review at 28.

[56] *Id.* at 28.

Rysak from making the trip in the fourth quarter of 2018.[57] By January 2019, she and Luckenbach had made the trip and it was "fruitful."[58] It was only later in 2019, when the team realized that production slowed because it lacked paste technicians with experience in Vista products that Luckenbach commented, "Pat and her paste technicians from KoP should have traveled more often to Vista to be trained on the pastes and equipment."[59]

Rysak's real time performance reviews do not suggest that she refused to engage with the Vista team. Luckenbach wrote that in response to the "challenge… learning about the new products and equipment coming from Vista," Rysak's team completed 98.3% of the assigned qualifications.[60] Luckenbach critiqued Rysak as needing to work on accepting Ferro's way of doing business, but with the qualification that he has seen her reliance on her past experience and techniques "pay off in times of crisis."[61] He cited one incident in which Rysak did not follow protocol for a particular paste. After she followed the instructions given, the paste met the specifications.[62]

Rysak's purported failures with respect to Project Palladium are not documented in her reviews. Luckenbach attributed disruptions and delays in the paste department to "a lot of factors…some of which are out of Pat and her team's control."[63] He agreed with Rysak that the King of Prussia facility held itself to a higher quality standard and worked

---

[57] *Id.*

[58] *Id.* at 28-29.

[59] 2019 Performance Review at 37-38.

[60] 2018 Performance Review at 33-34.

[61] 2019 Performance Review at 43.

[62] *Id.*

[63] *Id*.

harder to meet customer demands than the Vista facility did.[64] He understood her desire to change or fix the Vista formulations, but believed that the team should become more familiar with the Vista pastes and protocols before making changes.[65] He noted that it was a tough year for every department manager at King of Prussia. "Growth is coming so quickly that managers are just trying to 'stay afloat…'."[66] Yet, "Pat is a very strong team player" and "Pat and her team go the extra mile to understand and meet the needs of our customers."[67]

Ferro contends that Rysak exhibited performance deficiencies implementing SAP, a software tool used to process orders, productions, planning and accounting.[68] Rysak's SAP skills improved over the 2019 year.[69] In contrast to Ferro's contention that "she did not make [SAP] a priority,"[70] the 2019 review reported that Rysak often asked for help with SAP, which is why her SAP skills improved.[71] Given her heavy workload at the time, she was unable to grow her skills in SAP "as [she] would like."[72] Rysak did not stand out in her need for improvement implementing SAP. Luckenbach determined, "This is an area that most managers in KoP need to continue to work on."[73]

---

[64] *Id.* at 42.

[65] *Id.* at 44.

[66] *Id.* at 46.

[67] *Id.* at 45-46.

[68] DMSJ at 10.

[69] 2019 Performance Review at 40.

[70] DMSJ at 10.

[71] 2019 Performance Review at 40.

[72] *Id.*

[73] *Id.*

It is undisputed that Rysak's position was slated for elimination as part of a reorganization plan proposed by Besler on January 31, 2020.[74] Her supervisor, Luckenbach, finalized and shared her performance review on February 15, 2020.[75] He rated her as meets expectations.[76] If there were any concerns about her performance, they were not documented in the performance review finalized two weeks after Besler decided to terminate her. In short, the performance reviews contradict Besler's claim that Rysak performed poorly.

Whether management had issues with Rysak's credibility and lack of teamwork is also disputed.[77] Besler recalls a January 2020 incident where Rysak reported that a customer had extended a delivery deadline.[78] He claimed that the customer denied approving the delay, causing him to question Rysak's credibility.[79] Rysak disputes this version of the event and does not recall it.[80] There is no document regarding the supposed incident.[81]

A reasonable juror could conclude that if Rysak had deliberately lied about a deadline, the company would have noted it. In contrast, her performance reviews reported

---

[74] Email from Wayne Besler to Matthias Bell and Arturo Del Rio Re: KoP Org Change, Jan. 31, 2020 ECF 40-8 (attached as Ex. L to PRDSF) ["Reorganization Chart"]; Reorganization Plan and Labor Costs Slide.

[75] The performance review was entered by Corry Luckenbach on February 15, 2020. 2019 Performance Review at 37.

[76] *Id.*

[77] DSF ¶¶ 80-85; PRDSF ¶¶ 80-85.

[78] DSF ¶ 83, Besler Dep. 64:24-66:20.

[79] DSF ¶ 85, Besler Dep. 83:1-6.

[80] PRDSF ¶¶ 80-85, Rysak Dep. 204:15-24.

[81] Besler Dep. 100:20-101:04.

that in "customer experience," she "exceeds some expectations"[82] and "meets expectations."[83] The reviews remark that her customer experience was "definitely an area of strength"[84] and "Problem solving for customers is an area where Pat shines."[85] With respect to integrity, Luckenbach wrote in 2018 that Rysak "always consider[s] and act[s] according to legal and ethical standards."[86]

Significantly, Rysak's performance was not given as a reason for her termination until the lawsuit. Luckenbach was never told that her performance played any role in her termination.[87] In fact, he wanted her to remain with the company because he valued her experience and knowledge.[88] He requested that Besler continue to employ Rysak and create a position for her.[89]

It is undisputed that the only reason given to Rysak for her termination was position elimination.[90] Performance was not mentioned. Luckenbach was not involved in the decision to terminate Rysak.[91] Nor was he asked whether Rysak should be terminated.[92]

A factfinder could infer that if performance had been an issue, Rysak's direct supervisor would have been consulted. That he was not could lead a jury to conclude that performance was an excuse created post-termination.

---

[82] 2017 Performance Review at 21, 2018 Performance Review at 30.

[83] 2019 Performance Review at 43

[84] 2018 Performance Review at 30.

[85] 2019 Performance Review at 43-44.

[86] 2018 Performance Review at 29.

[87] PSF ¶ 68; DRPSF ¶ 68.

[88] PSF ¶ 69; DRPSF ¶ 69.

[89] PSF ¶ 70; DRPSF ¶ 70.

[90] PSF ¶ 80; DRPSF ¶ 80.

[91] Luckenbach Dep. 58:18-19.

[92] *Id.* 58:20-22.

There is no documentation that Ferro ever did a comparison of Rysak and Besecker before Besler fired Rysak.[93] Besler unilaterally made the decision to eliminate Rysak's position.[94] Explaining his process, he said "Overall performance was reviewed and Brian was the superior candidate. The reason being, as I mentioned earlier, because of attitude, willing to accept change and job knowledge."[95] There is no documentation comparing the qualifications of Rysak and Besecker.[96]

*The Available Position*

The parties dispute whether there was a position available when Rysak was terminated for which she was qualified. Ferro argues that there was no management level position requiring her skill set.[97] Rysak argues she was qualified for an open position within Besler's reorganization plan. It was Paste Production Supervisor.

Following a discussion among management, on January 31, 2020, Besler sent his King of Prussia reorganization plan to Matthias Bell, President of Ferro's parent company, and Arturo Del Rio, Director of Human Resources Americas.[98] The plan included two organization charts: "Current State" and "Future State". The "Current State" chart, reflecting the organization before reorganization, shows five middle managers reporting to Operations Manager, Corry Luckenbach, including Pat Rysak, as Manager Paste Production and Brian Besecker, as Manager Tape Production.[99] The "Future State" chart,

---

[93] PSF ¶ 56; DRPSF ¶ 56.

[94] Besler Dep. 126:10-127:14

[95] *Id.* 41:15-19.

[96] PSF ¶ 56; DRPSF ¶ 56.

[97] DMSJ at 22.

[98] Reorganization Chart at 37; Del Rio Garcia Dep. 118:9-14.

[99] Reorganization Chart, Current State at 39.

explaining the reorganization, proposed four managers reporting to Luckenbach. The new plan eliminated only Rysak's position.[100] The plan created one managerial position overseeing both Paste and Tape operations. Brian Besecker is named on the chart as the manager in this position. There are two new supervisory positions, Paste and Tape, reporting to Besecker. These positions are identified as "open", meaning they were not yet filled.[101]

Ferro's argument that the company had no other positions available for Rysak is contradicted by its own employee's testimony describing the new Paste Supervisor position created in the reorganization plan. Ferro's Human Resources Manager, Sarah Mackey, testified that Rysak would have been qualified for the new Paste Production Supervisor position.[102] Mackey stated that it was Besecker's decision to hire for that position.[103] Besecker admitted that he was aware there was an open production supervisor role in paste when Rysak was terminated. Indeed, he was the person who asked for the position to be created.[104] He also "would assume that [Rysak] would probably be qualified…" for the supervisory position.[105] Besler testified that he did not consider Rysak for any positions following his decision to eliminate her position. He stated that he did not consider her for an open position once he decided to promote Besecker to the new role.[106] When asked if she was eligible for rehire, he responded that her

[100] Reorganization Chart, Future State at 40.

[101] Reorganization Plan and Labor Costs Slide at 75.

[102] Mackey Dep. 98:1-8.

[103] *Id.* 100:10-13.

[104] Besecker Dep. 27:21-28:9.

[105] *Id.* 28:19-29:8.

[106] Besler Dep: 61:14-21, 63:2-6.

position was eliminated to save the company money and that "there was no need or reason to bring [her] back."[107] He disregarded Luckenbach's request that he retain her in the company and, if need be, create a position for her to stay.[108]

A reasonable jury could find that because Rysak was never considered for the open supervisory position despite her supervisor's endorsement of her experience and knowledge and his plea that the company keep her, that Ferro wanted her out based on her age.

The inconsistencies in Besler's testimony about Rysak's performance and the actual performance reviews, the termination of other older employees, and the lack of documentation of a genuine comparison of the qualifications of Rysak and the younger employee suggest that Ferro's reasons for terminating Rysak were pretextual. Given that after Rysak and three others declined the VERP, they were terminated, and no younger employees were eliminated in the reorganization plan could lead a reasonable jury to conclude that age discrimination motivated Ferro's decision to terminate her.

## Conclusion

There are genuine issues of material fact bearing on whether Rysak's termination as part of Ferro's reorganization plan was the result of age discrimination. Thus, we shall deny Ferro's motion for summary judgment.

---

[107] *Id.*

[108] Luckenbach Dep. 59:2-17.